### W. J. McGee and E. T. Bridges v. J. A. Corbin.

No. 1141. Decided November 3, 1902.

**1.—School Land—Lease—Expiration of Term.**

A lease of school land running for two years from August 26, 1899, must be understood as accepted by the parties in accordance with the settled construction acted on by the Land Office, which included that day within the term, and to have expired at midnight on August 25, 1901. (Pp. 40, 41.)

**2.—School Land—Application to Purchase—Filing.**

Where numerous applications to purchase school land, inclosed in one package, with the money necessary to pay for all, were handed to the clerk at once, and his file mark then indorsed upon the one on top of the package, such filing was not invalid, and was sufficient to give the applications precedence over separate ones for the same land presented and filed later, but before he had indorsed the file mark upon each separate application in the package. (P. 41.)

**3.—Same—Affidavit—When to Be Made.**

Though a previous lease had not expired nor the land become open to purchase until midnight, an affidavit of settlement in good faith, made by an applicant to purchase at 11 o'clock p. m., was sufficient, since no change in the situation could reasonably be supposed to take place in so short an interval. (Pp. 41, 42.)

**4.—School Land—Trespasser as Actual Settler.**

The right of an applicant to purchase school land as an actual settler, upon the expiration of a previous lease of it, was not defeated by the fact that he entered and made settlement upon it before the expiration of the lease and without consent of the lessor. (P. 42.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Schleicher County.

*L. H. Brightman, C. F. Dickinson,* and *G. H. Goodson,* for plaintiff in error McGee.—The lease being for a period of two years "from" the 26th day of August, A. D. 1899, expired at midnight on August 25,

1901. Fox v. Nathans, 32 Conn., 348; Marys v. Anderson, 24 Pa., 272; 25 Atl. Rep., 621; Nesbit v. Godfrey, 155 Pa., 251; Donaldson v. Smith, 1 Ashm. (Pa.), 197; Bigelow v. Willson, 1 Pick., 485; 27 N. Y. Sup. Ct., 604; Pugh v. Leeds, 2 Cowp., 714; Deyo v. Bleakley, 24 Barb., 9; Buchanan v. Whitman, 151 N. Y., 253; 45 N. E. Rep., 556.

The rule as to the computation of time is that if the lessee takes possession on the day of the date of the lease, the same being the day named as "from" in the lease, or if under the terms of the lease and the intentions of the parties he could have had possession on that day, then that day is included within the term. Wood's Landl. and Ten., 335, 452; 45 N. E. Rep., 556.

In the absence of any other evidence as to whether the lessee had possession, or was entitled to possession on the day of the date of the lease, and in the absence of evidence as to what were the intentions of the parties to the contract of lease, the legal presumption will follow that it was the intention of the parties to give to the lessee a present interest and right of possession on the day of the date, and the day of the date will be included within the term. Wood's Landl. and Ten., 335, 452.

In a case of doubt as to the proper construction and interpretation of the contract of lease as to the time of its expiration, the construction and interpretation adopted and acted upon by the parties to the lease will be given effect. Railway v. Johnson, 74 Texas, 256; Chicago v. Sheldon, 9 Wall., 50; Bish. on Con., sec. 412.

We refer the court to the very exhaustive discussion as to the computation of time in the note to the case of Holbert v. San Saba Association, beginning on page 193, in book 49 of the Lawyers Reports Annotated. It will be seen from the discussion in the note that as to whether the day of the date shall be included or excluded depends on a multitude of circumstances applicable to the particular facts of each reported case; that it largely depends upon the particular provisions of the statute under which the question arises, or on the intention of the parties, and on many other circumstances. Beginning at page 210 follows a discussion as to whether the day of the date shall be included or excluded with reference to a lease contract, and in which it is shown that the different principles as to the inclusion or exclusion of the day of the date differentiate lease contracts from most all other cases in which the computation of time becomes a question; and from the presentation of the matter and the authorities given in the note in said case, beginning at page 210, it is confidently believed that the rule is as announced in the proposition above stated. That is, that if by the contract or by the intention of the parties a present right of possession was had, or the right thereto given on the day of the date, that then the day of the date was included within its terms; and in the absence of any evidence in that respect the presumption would always obtain, because of a universal custom to that effect, that a right of possession was intended on the day of the date.

An actual settler in "good faith," as that term is used in the statute,

merely means an actual settler in "good faith" as between the actual settler and the State, and does not relate to any want of good faith to some other party. Hobert v. Wilson, 31 S. W. Rep., 710; Cordill v. Moore, 17 Texas Civ. App., 217; Lester v. Elliott, 26 Texas Civ. App., 429; Hazlewood v. Rogan, opinion on file.

The agreed case shows that the oath was legally administered to each applicant, and in the event that it does not, the legal presumption would follow that the officer administering the oath did his duty. Arbuckle v. State, 81 Texas, 191; Guewa v. San Antonio, 1 Texas Civ. App., 422.

It is true that the general rule is that applications can not be made until the land is on the market. This land came on the market at midnight on August 25, 1901, and the appellee McGee having made and sworn to his application within an hour before that time, and all the facts thereunder stated being true at the time that he made the affidavit, and continuing to be true up to the time that he presented and filed the same with the clerk, and at all times thereafter, his application was not made before the land came on the market, and the fact that the affidavit was made by him about an hour before midnight would not invalidate his application presented after the land came on the market. Lester v. Elliott, 26 Texas Civ. App., 429; Cordill v. Moore, 17 Texas Civ. App., 217.

The land office being intrusted with the duty of executing the laws with reference to selling the public land, and having to pass on the questions necessary to be determined in order to make a sale, and having passed on all the questions involved herein, and disposed of them by selling the land to appellee McGee, all doubt as to any of the questions involved, either of law or fact, should be resolved in favor of upholding its action.

*Hill & Lee* and *E. Cartledge,* for plaintiff in error Bridges.—1. The court erred in holding that section 39, the home section of appellant Bridges, and which was embraced in the Jackson lease, was properly on the market and subject to sale on August 26, 1901. Bridges as owner of said lease, and the Commissioner of the General Land Office, could not treat, consent, or agree that said lease shall terminate or expire at midnight of August 25, 1901, or at any other time or date than that fixed by the terms thereof.

2. The court erred in holding that the appellant Bridges "knew that the Commissioner regarded his lease as expiring on the night of the 25th, and that the lands would be thrown open to applications the next day," and that "he (appellant Bridges) assented to this construction and himself acted upon it," because there is no evidence showing that Bridges knew when the Commissioner regarded his lease as expiring or that he ever assented to any construction that would make his lease expire at any time different from that expressed upon the face of the lease contract.

3. The court erred in rendering judgment for the section 49 in controversy in favor of appellant Corbin, because the evidence shows that

appellants Bridges and Corbin stand in the same attitude with reference to their respective home sections,—the title to neither of which is involved in this cause,—and because whether the section involved in this suit came on the market on August 26th or on the 27th, under the evidence the applications of appellant Bridges on both these days were prior to those of appellant Corbin. Appellant Corbin's home section 7 having been awarded by the Land Commissioner to appellee McGee, this court erred in adjudicating questions of title to same, in effect, by holding that appellant Corbin had sufficient title thereto upon which to base his right to purchase as additional land the section (49), the only land involved in this cause.

*T. C. Wilkinson, N. A. Brown,* and *Rector & Brown,* for defendant in error.—A party can not be an actual settler in good faith, as that term is used in the school land law, upon school land, at a time when the land is not subject to sale, or offered for sale by the State, but is under an absolute lease made by the State to a third party, which lease was duly recorded as required by law and is in good standing; and hence an affidavit of settlement made at such time would be premature and invalid and could not be the basis of title to the land applied for. His settlement would attach as a school land settlement the moment the lease expired, and not till then could he make a valid affidavit of settlement or a valid affidavit for the purchase of additional land. Gen. Laws, Act of April 19, 1901, p. 292; Rev. Stats., arts. 4218, 4297; Cordill v. Moore, 17 Texas Civ. App., 217; Brown v. Shiner, 84 Texas, 505; Cattle Co. v. Bruce, 14 S. W. Rep., 621; Metzler v. Johnson, 1 Texas Civ. App., 137.

The court erred in not finding for plaintiff for the land in controversy for the reasons heretofore stated, and because the applications of defendant Bridges for the land in controversy and also for his home section were not accompanied by the affidavit required by law, for the record shows that what purported to be an affidavit duly signed, sealed, and sworn to on the 26th day of August, 1901, was in fact signed and sealed on the 25th day of August, 1901, and the officer's jurat all filled out on the 25th day of August, 1901, as of the 26th, and while the application of defendant Bridges was in point of time filed with the clerk before that of plaintiff it was invalid for the reasons stated, and that of plaintiff was valid and plaintiff's payments were duly made. 1 Am. and Eng. Enc. of Law, 310; Shelton v. Berry, 19 Texas, 154.

WILLIAMS, ASSOCIATE JUSTICE.—Corbin sued McGee and Bridges to recover the land in controversy. Each of the three parties asserted title by purchase from the State and the judgment of the District Court was in favor of McGee. Both Corbin and Bridges appealed, and the Court of Civil Appeals reversed the judgment of the District Court and adjudged the land to Corbin. McGee and Bridges have prosecuted separate writs of error to this court.

The land in controversy is section 49. None of the parties settled

upon it or claimed it as a home section, but each sought to purchase it as additional land, and the title of each to it depends upon his right to the other section which he settled upon and sought to purchase for a home. The following are the facts upon which their respective rights rest:

Under the Acts of 1895 and 1897 all of the lands involved were classified, appraised, and placed upon the market for sale as belonging to the common school fund. On the 3d day of January, 1900, the Commissioner of the General Land Office executed two leases, one to Jackson and the other to Loftin, both running for the same time, viz., "for a term of two years from the 26th day of August, 1899," and being in the same form and upon the same terms and conditions, and each embracing a number of sections. Each of the lessees inclosed the sections leased by him in a pasture with a wire fence. Section 49 in controversy and section 39 claimed by Bridges as his home section were in the Jackson pasture, while section 7, upon which both Corbin and McGee settled and which each claims as his home section, was in the adjoining Loftin pasture. On the 25th day of August, 1901, both Corbin and McGee entered Loftin's pasture, without his consent, and actually settled upon section 7, which settlements were made and have since been maintained in good faith, unless the fact that they began before the expiration of Loftin's lease deprives them of that quality. Jackson had, on the 6th day of June, 1901, assigned his leasehold to Bridges, and on the 25th day of June, 1901, Bridges in good faith made and has since kept up the settlement in good faith upon section 39.

On August 25, 1901, about eighty persons were at the county seat of Schleicher County for the purpose of making applications for the purchase of school lands, it being supposed that about one hundred and thirty-two sections would come upon the market for sale at the expiration of that day. The county clerk made it known that he would open his office at 12 o'clock, midnight, for the purpose of receiving applications, and at that time was in his office for the stated purpose. McGee had prepared his applications and made the necessary affidavits at 11 o'clock p. m. He and twenty-one other applicants had engaged an attorney to file the applications, and when the office was opened this attorney worked his way through the crowd to the clerk's desk, and at 12 o'clock, 1 minute and 20 seconds presented the bundle of applications to the clerk with the direction that he "file these applications." Each of the twenty-two applicants had separate applications for a home section and for three additional sections which were pinned together; each set of applications was placed in the bundle, thus containing eighty-eight applications, and on the top was the amount of money necessary to make the first payment for all. The clerk received the bundle, counted the money, completing this at 12:15 a. m., and then indorsed, as of that time, on the application on the top of the package, his file mark. The applications of Bridges and Corbin were presented within a few minutes after those above mentioned, and were received by the clerk after he had

completed counting the money as stated. Within a day or two the clerk indorsed his file mark upon each application in the bundle, giving the time of filing as that when the bundle was marked filed. In some respects the manner of the presentation and filing of the applications of Corbin and Bridges differed from that pursued by McGee and those acting with him, but the view taken of the objections to the McGee claim, which was the first presented and filed, makes further statement unnecessary. Corbin and Bridges also made new applications on the morning of the 27th of August, Corbin's being the first of these; and Bridges made a third application August 30th. In due time all of the applications were forwarded to the Land Office and the Commissioner awarded section 7, upon which Corbin and McGee had settled, and section 49, in controversy, to the latter; and awarded to some person, whose name the record does not disclose, section 39, upon which Bridges had settled.

The first question which will be considered is, whether or not, at the time McGee filed his applications, the leases to Jackson and Loftin had expired so as to leave the land subject to be purchased; and this depends upon whether or not the 26th day of August, 1901, is to be included in the term of the leases. Since McGee's home section was embraced in one lease and section 49 in the other, both leases must have expired when he applied to purchase to give effect to his applications from the time of filing. Upon the question just stated, we said in Hazlewood v. Rogan, 95 Texas, 306.

"The weight of authority seems to be that in construing a lease which is to run 'from' a day for a certain number of days, months, or years, ordinarily the day from which it is to run is to be excluded. On the other hand, it is also held that the intent of the parties must govern, and that the intent to include the day may be inferred from the context or even from the circumstances of the particular case; and it may be that had it been shown in this case that the lease to Schreiner was in the form in general use in the Land Office, and that the uniform and well known construction in that office was to include the day mentioned for the beginning of the term, such construction should govern."

The Court of Civil Appeals thought that the fact that both the Commissioner of the General Land Office and Bridges, the assignee of the Jackson lease, treated it as expiring at midnight of the 25th, authorized the conclusion that this lease did so expire; but that, as no such action on the part of Loftin appeared, the same conclusion was not warranted as to his lease. We agree to the first proposition, but not to the latter as it affects this case. No action of Loftin appears, but the Commissioner, in accepting McGee's application, treated the two leases as having expired at the same time. They were alike in all respects and there could be no just reason for his holding that they terminated at different times. A proper discharge of his duties and a due respect for the rights of parties dealing with the State would require him, in such matters, to treat all alike, and we think it should be assumed, in the ab-

sence of anything to the contrary, that in allowing these sales he acted upon a construction applying uniformly to all such leases. Further reflection has confirmed us in the view intimated in the above quotation, that such a construction by him should be treated as entering into the lease and determining its duration. The law leaves it to the Commissioner and lessees to fix the term for which leases are to run as they may agree, and when, in the management of so extensive a business running through many years, this officer has adopted a form of lease and by a construction fixed its duration, persons applying to lease school lands should be held to have assented. This view is essential to the proper and orderly management of the business of selling and leasing these lands and to the repose of titles bought under such rulings. As shown above, there is no unbending rule of law upon the subject constraining the parties to such contracts, and therefore no reason why a court must adopt a rule as to these leases different from that established and acted on in the department intrusted with leasing and selling. It is of little importance to lessees whether the day of the date of the lease or its anniversary be included, but it is of vast importance to those buying lands previously embraced in leases that the rulings under which they have acquired their titles be not unnecessarily disturbed. Besides all this, it can not be denied that, consistently with all that appears in this record, a state of facts may have existed under which the Commissioner could properly have held that the Loftin lease as well as that of Jackson was at an end after midnight of August 25th. The recognition of McGee's purchase by the Commissioner affirms as much; and the presumption being in favor of the correctness of the action of that officer, it was incumbent upon the parties attacking it to show the facts necessary to establish its illegality, and this has not been done. Boaz v. Powell, *ante,* p. 3.

It is further objected to McGee's title that his applications were not properly filed when they were merely presented to the clerk, in the manner stated, in a bundle with many others. The statute has prescribed no rule except that applications shall be filed in the office of the clerk and that officer shall indorse upon them the hour of filing. The manner in which claims are to be brought to the attention of the clerk so as to secure his recognition and action is a matter of detail which must be left largely to him. In this instance he did receive the applications when presented and recognized them as filed before the others, and the evidence shows no good cause for the court to reverse his action and that of the Commissioner, both of which must be presumed to have been fair and regular until the contrary appears. The complaining parties have failed to show any injustice to themselves in this particular.

Another objection is that McGee's affidavit was made before the land came upon the market and can not be taken as an oath to the existence of the necessary facts at the time the application was filed. The initiation of such a claim is not the making of the affidavit, but the filing of the application accompanied by the affidavit. The affidavit is an essen-

tial part of the application and is intended to show the existence of the facts sworn to at the time the claim is begun. But an oath to the existence of such facts as the affidavit must state at 11 o'clock at night is substantially equivalent to an oath of their existence when the affidavit is presented just after 12 o'clock, for the reason that no change could reasonably be supposed to have taken place in so short an interval. In so strict a proceeding as an attachment, wherein the existence of certain facts must be sworn to when the writ is applied for, no such rigid rule as that contended for is enforced, but an affidavit is held sufficient if made so shortly before the suing out of the writ as not to "authorize the inference that the facts stated had ceased to exist or as not to cast suspicion on the fairness and integrity of the proceedings." Campbell v. Wilson, 6 Texas, 395; Wright v. Ragland, 18 Texas, 293. Here, not only can no such inference be indulged, but it is an admitted fact that no change had occurred. The fact that the lease had not expired when the affidavit was sworn to is unimportant. The affidavit performed no office until used with the application and, being equivalent to one then made, was sufficient. But it is said that McGee could not be a settler in good faith on his home section because, at the time he entered, it was under lease to Loftin, upon whose rights a trespass was committed by such entry. The question is not as to the character of the original entry but as to his status when he applied to purchase. At that time all right of Loftin had ceased, the State had the right to sell, McGee was on the land intending to make his home there, and possessed all the qualifications requisite under the statute to entitle him to buy. The inception of his settlement was immaterial. Cravens v. Brooks, 17 Texas, 268.

It has often been held by the Supreme Court of the United States and other courts that a right to pre-empt land, as against another, can not be obtained by a forcible entry upon the actual possession of such other, who is in possession and claiming the land, although it turn out to be public land of the United States. Atherton v. Fowler, 96 U. S., 513. It is unnecessary that we undertake to further state the extent of that doctrine, for it clearly has no application here. A distinct limit was set by law to such possession as Loftin had under his lease and all his rights ceased before any effort was made to purchase. No impediment was then in the way of a sale to one actually settled upon the land, as was McGee, and the title now asserted by him conflicts with no right or claim of Loftin. It is not even made to appear that force of any character was used or that Loftin's enjoyment of his leasehold was in any way impaired.

Having decided all the objections raised to McGee's title in his favor and his claim being first in time, we must hold that he was entitled to the judgment which the District Court gave him. The judgment of the Court of Civil Appeals will therefore be reversed and that of the District Court affirmed.

*Judgment of the Court of Civil Appeals reversed.*
*Judgment of the District Court affirmed.*