# APRIL, 1918

W. R. STOCKWELL ET AL. v. J. T. ROBISON, COMMISSIONER OF THE GENERAL LAND OFFICE, ET AL.

No. 2900.  Decided April 3, 1918.

**1.—Public Land—Sale—Forfeiture—Reinstatement.**

A purchaser of public land forfeited for non-payment of interest is entitled to reinstatement by payment, only when no rights of subsequent purchasers have intervened before such payment. (P. 139.)

**2.—Public Land—Sale—Application to Purchase.**

Application to purchase public land being required to be made "through due course of mail," and not in person (Rev. Stats., art. 5410; Byrne v. Robison, 103 Texas, 20), may be mailed from points remote from the capital, but is of no effect until filed in the Land Office. (P. 139.)

**3.—Same—Premature Application.**

Public land being appraised and advertised as on the market at a certain date, an application for purchase mailed before and accompanied by required affidavits made before, but not reaching the Land Office until that date, was not premature, and, being in due form and for the best price offered, it entitled the applicant to an award of the land in preference to a later applicant for purchase or reinstatement. (Pp. 139, 140.)

**4.—Same—Case Stated.**

A purchase of public land having been duly forfeited by the Land Commissioner and the land reappraised and announced for sale on a certain date, a proper application to purchase it was received by the Commissioner on that date. Though this was mailed at a distant point before that date together with the required affidavits accompanying it, made at the same time, the application was not premature, and applicant was entitled to an award of the land as purchaser, as against a subsequent application of the former purchaser for reinstatement on payment of the interest for default in which his rights had been forfeited. (Pp. 138-140.)

**5.—Public Land—Forfeiture—Reappraisement.**

Article 5407, Rev. Stats, authorized the Land Commissioner to reappraise:

public land for sale, after forfeiture, in 1916, of a sale of same under a higher appraisement made under the Act of 1913. (P. 140.)

Original application to the Supreme Court by Stockwell and another for writ of mandamus against Robison as Commissioner of the General Land Office. Hudson and another, adverse claimants of the right to purchase, were also made respondents to the petition.

*Gregg & Love,* for relators.—The applications of Hudson and Morris to purchase the land were prematurely made and conferred no rights presenting an obstacle to relator's reinstatement. Williams v. Barnes, 111 S. W., 436; Willoughby v. Townsend, 93 Texas, 80; Ford v. Brown, 96 Texas, 537; Corrigan v. Fitzsimmons, 76 S. W., 69; Davis v. Yates, 133 S. W., 281; Rose v. San Antonio & Mex. G. Ry. Co., 31 Texas, 49; Washington v. Rosario Min. Co., 28 Texas Civ. App., 430; Estes v. Terrell, 99 Texas, 622, 92 S. W., 407; Jones v. Robison, 104 Texas, 70.

*B. F. Looney,* Attorney General, and *G. B. Smedley,* Assistant, for respondent Robison, cited: Pohle v. Robertson, 102 Texas, 274; Metzler v. Johnson, 1 Texas Civ. App., 137, 20 S. W., 1116; Mound Oil Co. v. Terrell, 99 Texas, 625; McGee v. Corbin, 96 Texas, 35; Lester v. Elliott, 26 Texas Civ. App., 429, 63 S. W., 916; Allen v. Frost, 31 Texas Civ. App., 232, 71 S. W., 767.

*Hudspeth, Dale & Harper,* for respondent Hudson, cited: Byrne v. Robison, 103 Texas, 20; Marshall v. Robison, 191 S. W., 1136; Sherrod v. Terrell, 97 Texas, 166; Jones v. Robison, 104 Texas, 70; Sanford v. Terrell, 87 S. W., 656.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The relators, William R. Stockwell and H. L. Tolar, here seek a mandamus to require the Commissioner of the Land Office to reinstate their purchases of two sections of public land. The land was originally awarded to George C. Harris and A. L. Harris. The awards to them were forfeited on July 12, 1913, for failure to pay the interest on their obligations. They applied for its reappraisement under the Act of 1913 (chapter 160, General Laws of 1913), and it was reappraised under that Act, one of the sections being valued at $5 per acre and the other at $6 per acre. Thereafter, the two sections were reawarded to the original owners, to whose rights the relators succeeded as substitute purchasers. They failed to pay the interest accruing November 1, 1915. They were notified by the Commissioner in April, 1916, that a forfeiture would be declared on August 15, 1916, unless they paid the interest by that time. It was not paid, and on August 25, 1916, the sales to them were duly declared as forfeited. Following the forfeiture, the Commissioner, on the same day, classified the land as agricultural and appraised it at $4 per acre; the list, appraisement and notice of the forfeiture being sent at the same time to the county clerk of the county

where the land lay, and received by him at 4 p. m. on August 29, 1916, and recorded in his office at 10 a. m. on August 30, 1916. In the list of lands duly advertised by the Commissioner as subject to forfeiture if the interest were not paid by August 15, 1916, and as subject to purchase on September 1, 1916, these sections were included,—classed as agricultural land and their appraised value being stated as $4 per acre.

On September 1, 1916, the applications, respectively, of Clyde Hudson and W. T. Morris to purchase the two sections as home tracts at $4.03 per acre were received by mail at the Land Office. Each was in due form and accompanied by the necessary preliminary payment, the obligation of the applicant, and the affidavit required of him by law, dated August 28, 1916. The applications were duly filed at 10 a. m. the following day, September 2nd. On the same day—September 2, the relators had a bank of Alvin, Texas, wire the Commissioner that it was remitting him the interest due by the relators, the amount of which they had delivered to the bank for that purpose. The telegram was received by the Commissioner that afternoon. The amount of the interest was forwarded and received at the Land Office on the morning of September 5th. The Commissioner refused to reinstate the purchases of the relators because of the rights acquired by Hudson and Morris.

The relators were entitled to be relieved of the forfeiture declared against them for the non-payment of their interest only in the absence of intervening rights in others. They made no offer to pay the interest until after Hudson and Morris had filed their applications to purchase. Hence the question in the case is whether Hudson and Morris acquired any rights to the land.

When the applications of Hudson and Morris were filed in the Land Office the land was on the market for sale. From aught that appears here, their bids were the highest offered. Each was for more than the appraised value. They tendered the required cash payment and obligation, and filed with their applications the necessary affidavit. In our opinion they perfected their rights to the land.

The chief objection urged against their claims is that they made their affidavits on August 28th, prior to the time the land was on the market, rendering, it is said, their applications premature. We think the objection is wholly without force. Anyone entitled to purchase land in the situation of this may make application for it at any time after it is open to purchase, even though it be immediately afterward. This is plainly the contemplation of the law since it does not postpone the right to make the application to any particular period after the land is upon the market. The application is of no effect until filed in the Land Office, though the statute, article 5410, provides that it shall be filed "through due course of mail and not by anyone in person." Byrne v. Robison, 103 Texas, 20. It would be a very unreasonable requirement to compel everyone entitled to bid upon these lands on the day they are subject to purchase to come to the State capital for the purpose of making the necessary affidavits to accompany their applications, in

order to avoid their being made before the identical day the applications may be lawfully filed. On the contrary, it is the theory of the law that the applications may be mailed from points in the region of the land, in most instances remote from the capital, requiring ordinarily a few days for transmission. It is apparent that this was true of the applications of Hudson and Morris which were made in Yoakum County, where this land is situated. In such cases there can be to our minds no objection to the affidavits being made substantially at the time the applications are mailed, where, as here, the truthfulness of their statements, either when made or when the applications are filed, is in nowise challenged. It is evident that the affidavits of Hudson and Morris were made on August 28th for the purpose of having their applications reach the Land Office as early as possible after the land was upon the market. They were made only a few days prior to that date. The applications were not received or filed before the land was open to purchase, and were, therefore, not premature. The affidavits were of no effect until the applications were filed. Under the facts they are to be treated as having been made contemporaneously with the filing of the applications. McGee et al. v. Corbin, 96 Texas, 35.

The further contention is made that the Commissioner's reappraisement of the land at $4 an acre after its appraisement under the Act of 1913 at a higher value and after the forfeiture of the sales to relators declared on August 25, 1916, was void. In so appraising the land the Commissioner acted under the authority conferred upon him by article 5407. The office of this article is entirely distinct from the provisions in respect to appraisements found in the Act of 1913, and it was not affected by that Act. It gave full warrant to the Commissioner's action.

The mandamus is refused.